UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


YOLANDA GIBSON

     Applicant,

v.                                        CASE NO. 8:15-cv-1911-T-23JSS

SECRETARY, Department of Corrections,

     Respondent.

_____/


## O R D E R

     Yolanda Gibson applies for the writ of habeas corpus under 28 U.S.C.

§ 2254 (Doc. 1) and challenges the validity of her state convictions for burglary,

theft, and battery on a person sixty-five years of age or older, for which

convictions Gibson serves twenty years imprisonment.  Numerous exhibits

("Respondent's Exhibit __") support the response.  (Doc. 8)  The respondent

admits the application's timeliness.  (Doc. 8, p. 4)

## FACTS[1]

     The victim, a sixty-eight year-old man, and his wife returned home from

an outing to find Gibson inside their home.  The victim observed Gibson leaving

out a back door and chased her.  The victim ultimately caught Gibson by the

shirt and pulled her to the ground.  The two wrestled and the victim succeeded

---

[1] This factual summary derives from Gibson's brief on direct appeal. (Respondent's Exhibit 2)

in pinning Gibson to the ground. When the victim refused to comply with Gibson's pleas to let her go, Gibson bit the victim on the arm, and freed herself. The victim pursued and caught Gibson a second time but Gibson managed to escape his grasp and flee. As she ran away from the victim's home, Gibson encountered the victim's wife, whom Gibson pushed aside and continued to run. The victim's daughter called 911 and Gibson was arrested and charged with burglary of a dwelling, robbery, two counts of battery on a person sixty-five years of age or older, and tampering with a witness.

A jury convicted Gibson of burglary, theft, and battery on a person sixty-five years of age or older. The jury acquitted Gibson of the second charge of battery. Because the jury could not reach a verdict on the witness tampering charge, the state ultimately *nolle prossed* the charge. Proceeding immediately to sentencing after the verdict, the trial judge sentenced Gibson to fifteen years imprisonment for the burglary conviction, to a consecutive five years for battery, and to time served for theft.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A

federal court must afford due deference to a state court's decision. "AEDPA prevents as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U. S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains the decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." 138 S. Ct. at 1192. "The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . . 138 S. Ct. at 1192.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Gibson's convictions and sentence. (Respondent's Exhibit 4) Similarly, in another *per curiam* decision without a written opinion the

state appellate court affirmed the denial of Gibson's subsequent Rule 3.850 motion for post-conviction relief.  (Respondent's Exhibit 9)  The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."  *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 562 U. S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even if there is no "opinion" or "analysis").

As *Pinholster*, 563 U.S. at 181–82, explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Gibson bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Gibson's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 6)

## INEFFECTIVE ASSISTANCE OF COUNSEL

Gibson claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that

counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Gibson must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Gibson must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Gibson cannot meet her burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S.Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Gibson must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a

rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

Although the state court's order omits citing *Strickland* as the standard for an ineffective assistance of counsel claim, no explicit citation is required. A state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775 86 (11th Cir. 2003). In Florida, *Strickland* governs an ineffective assistance of counsel claim. *Walls v. State*, 926 So. 2d 1156 (Fla. 2006). The state post-conviction court analyzed Gibson's ineffective assistance of counsel claims consistent with *Strickland* — not contrary to *Strickland* — by requiring proof of both deficient performance and prejudice. Consequently, Gibson must show that the state court's ruling was either an unreasonable application of *Strickland's* principle or an unreasonable determination of the facts. The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

**Ground One**

Gibson contends that her trial counsel rendered ineffective assistance by not adequately questioning or striking a juror.[2] To the extent that she raises in the federal application the same ground of ineffective assistance of trial counsel raised in her state Rule 3.850 post-conviction motion, Gibson challenges counsel's failure to both further question during *voir dire* juror Meredith Campbell and to move to strike Campbell from the venire. Campbell admitted during *voir dire* that she was the victim of an armed robbery and that the perpetrator was not arrested.[3] Gibson alleges that

---

[2] Gibson fails to present any supporting facts for any of the four grounds in her federal application. Affording a generous interpretation, *Haines v. Kerner*, 404 U.S. 519 (1972) (*per curiam*), Gibson's grounds are considered as presented to the state courts in either her post-conviction motion or her direct appeal. (Respondent's Exhibits 2 and 6)

[3] Campbell stated during *voir dire* (Respondent's Exhibit 1, transcript of August 6, 2012, jury selection, pp. 35–37):

> THE COURT: . . . . You were the victim of - -
>
> PROSPECTIVE JUROR CAMPBELL: A robbery at my house with a gun.
>
> THE COURT: It was an armed robbery?
>
> PROSPECTIVE JUROR CAMPBELL: Yes.
>
> THE COURT: Okay. I don't - - there's no allegation, in this case, the person was armed. But it is a  - - just reading between the lines, the accusation is some type of confrontation at somebody's house. Do you think that you would be reliving your own experience or could you put it aside?
>
> PROSPECTIVE JUROR CAMPBELL: I think I could put it aside.
>
> THE COURT: Obviously, whoever did it wasn't hurt; right?
>
> PROSPECTIVE JUROR CAMPBELL: Right.

(continued...)

Campbell was "clearly biased" and that trial counsel's failure to strike Campbell

rendered the trial fundamentally unfair. (Respondent's Exhibit 6, Motion for

Post-Conviction Relief, p. 3)

The state post-conviction court summarily denied this ground in Gibson's

Rule 3.850 motion (Respondent's Exhibit 6, Order Summarily Denying Defendant's

Motion for Post-Conviction Relief, pp. 1–2) (court's record citations omitted):

> First Defendant claims that [counsel] inexcusably failed to
> adequately question and/or strike a prospective juror because
> there is "clear evidence" the juror was biased. . . . [T]he Court
> determined that the juror had been the victim of an armed
> robbery, and asked whether she might "reliv[e her] own
> experience" or whether she could put it aside. The juror
> answered, "I think I could put it aside." The juror indicated that
> nobody had been arrested for the incident but stated that she
> would not hold this against law enforcement officers generally.
>
> After the Court finished its inquiry the floor was given to
> Assistant State Attorney Burnett, who briefly questioned the
> juror about her past confrontation. The juror confirmed that
> she could put aside her own experience and listen to the facts,
> though she added, "[Y]ou can't guarantee that it's not going to
> creep in. All I can do is my best to make sure that I can separate
> the two, my personal experience to what is going on in the
> courtroom." She added that she would do her best to remain
> fair and impartial. Defense counsel did not specifically address

_____

[3](...continued)

THE COURT: Any - - I guess they weren't able to find the people
that did it?

PROSPECTIVE JUROR CAMPBELL: Right. They were masked
and they came to my car. I actually walked out and walked on [sic]
them breaking into my cars.

THE COURT: I'm not going to ask you if you were satisfied with the
investigation. I need to know if you were [sic], are you going to hold
it against the officers?

PROSPECTIVE JUROR CAMPBELL: Oh, no.

the juror's prior bad experience but, during an omnibus inquiry about whether the prospective jurors would listen to all the evidence before making a decision, received an affirmative response from the juror in question.[4]

Nothing about the juror's answers remotely supports Defendant's claim that she was "clearly" biased. Instead, the juror indicated she could compartmentalize her own experience from the trial evidence she was about to hear, and not decide the latter based on the former. At most, she said at one point she thought she could put it aside. To turn this possibly ambiguous statement into actionable proof of prejudice requires a greater intensity of deconstructionism than this Court is willing to attempt. [Counsel] was obviously present during this inquiry and would have been available to pick up on nuances, voice inflections, body language, or any of the other criteria we use to evaluate someone's credibility. "I think I can" sometimes means "I may retain my doubts," but sometimes it means nothing more than "yes." Presumably counsel took the juror at her word, and Defendant provides no colorable reason why she should not have done so. No serious claim of effectiveness can be predicated on this evidence.

"The constitutional standard of fairness requires that the criminally accused have a panel of impartial, indifferent jurors." *Murphy v. Fla.*, 421 U.S. 794, 799 (1975). "The purpose of *voir dire* is to ascertain whether potential jurors can render a verdict solely on the basis of evidence presented and the charge of the trial court." *Wilcox v. Ford*, 813 F.2d 1140, 1150 (11th Cir. 1987). *See also J.E.B. v. Ala. ex rel. T.B.*, 511 U.S. 127, 143–44 ("*Voir dire* provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently."); *Mu'Min v. Va.*, 500 U.S. 415, 431 (1991) ("*Voir dire*

---

[4] Trial counsel inquired specifically of Campbell whether she could look at all of the evidence before making a determination of guilt, to which inquiry Campbell responded affirmatively. (Respondent's Exhibit 1, transcript of August 6, 2012, jury selection, p. 84):

examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges."). Effective assistance of counsel is required during *voir dire*. *Brown v. Jones*, 255 F.3d 1273, 1278–79 (11th Cir. 2001). Because empaneled jurors are presumed impartial, *Smith v. Phillips*, 455 U.S. 209, 215 (1982), Gibson must show that the juror selection process produced a juror that was actually biased against her to satisfy *Strickland's* prejudice requirement. *See Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) (finding that the defendant's Sixth Amendment right to a fair and impartial jury was not violated absent a showing that a jury member hearing the case was actually biased against him).

Gibson fails to cite any record evidence establishing that Campbell lacked the ability to decide her case fairly and impartially. The trial judge instructed the jurors that they must decide the case "based on the evidence and the law[;] [n]o other considerations." (Respondent's Exhibit 1b, p. 425) Jurors are presumed to follow the law as instructed by the trial judge and to comply with their oath. *Hallford v. Culver*, 459 F.3d 1193, 1204 (11th Cir. 2006); *United States v. Ramirez*, 426 F.3d 1344, 1352 (11th Cir. 2005).

Gibson neither shows actual bias nor establishes that, if trial counsel had stricken Campbell from the jury, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694. Gibson fails to establish that the state post-conviction court either unreasonably applied *Strickland* or unreasonably determined the facts in

denying this ground of ineffective assistance of trial counsel.  28 U.S.C. § 2254(d)(1), (d)(2).

**Grounds Two and Three**

In ground two Gibson contends that her trial counsel rendered ineffective assistance by not requesting a separate sentencing hearing to permit "adequate time for preparation."  Gibson asserts that trial counsel's error prevented her from having "time to gather mitigating information and notice people to speak on [Gibson]'s behalf . . . ."  (Doc. 11, p. 1)  Gibson claims that trial counsel's error deprived her of her right to due process.  In ground three Gibson contends that her trial counsel rendered ineffective assistance by not properly preparing to argue for a downward departure at the sentencing hearing.  As justification for a downward departure, Gibson "aver[s] that it has been 22 years since she committed a similar crime and over 7 years since she has been in trouble of any kind."  (Doc. 11, p. 2)  She further asserts that her trial counsel failed to obtain mental health records, which would evince that Gibson suffers from post-traumatic stress disorder and postpartum depression "that could have been used to explain some extenuating circumstances." (Id.)

The state post-conviction court summarily denied both grounds in Gibson's Rule 3.850 motion (Respondent's Exhibit 6, Order Summarily Denying Defendant's Motion for Post-Conviction Relief, pp. 2–3) (court's record citations omitted) (emphasis in original):

The remaining ineffectiveness claims both focus on [counsel]'s efforts at sentencing. Defendant is correct when she states that sentencing was imposed immediately after the verdict. Therefore, she faults [counsel] for not requesting a continuance so that she could develop evidence in mitigation. As evidence of prejudice Defendant argues that "[h]ad a separate sentencing been conducted there is a reasonable probability that the Defendant's sentence would have been less than 20 years." This begs the question of *what* evidence [counsel] would have been able to amass. That answer is at least partially furnished in the third ground [of both the Rule 3.850 motion and the federal application], which claims [counsel] should have argued for a downward departure sentence based on (a) [t]his was an isolated incident, committed in an unsophisticated manner, for which Defendant has expressed remorse, and (b) Defendant requires specialized treatment for a mental disorder unrelated to substance abuse and is amendable to treatment. The motion then proceeds to describe the conditions from which Defendant claims to suffer. It will be noted that the guidelines floor was slightly less than five years, but that the Court imposed the maximum possible sentence. One could argue that this fact alone should be enough to deflate Defendant's claim that a lesser sentence was highly likely with better representation. In addition, the argument that this was an isolated incident is legally specious given Defendant's horrendous prior record. *See e.g., State v. Waterman*, 12 So. 2d 1265 (Fla. 4th DCA 2009); *State v. Deleon*, 867 So. 2d 836 (Fla. 5th DCA 2004); *State v. Nicolosi*, 830 So. 2d 281 (Fla. 2d DCA 2002).

Moreover, it is a fair question whether this Defendant expressed *any* remorse for her actions. . . . . Defendant's version of events is approximately as follows: On the night previous to this incident she had been doing drugs, had had a bad reaction, and had wandered away from the site into some woods where she fell asleep. When she woke she began going house to house in the adjacent neighborhood. Although no one answered at the victims' home Defendant noticed the door was open and went inside only to use the telephone. Unfortunately, before her friend could arrive to pick her up, the victims came home. Defendant attempted to escape out the back door. However, before she could clear the property she was grabbed by one of the victims. He "jumped on top of me" and began hitting her, motivating her to defend herself. She begged to be released but he insisted she give back what she had taken; she denied taking anything. Eventually Defendant bit the victim's arm to free

herself of him. Defendant then swam a canal and ran up the street, at which time she was "confronted" by the second victim. The victim demanded, "Why did you this," and Defendant answered, "I was on drugs last night." Defendant then pushed the second victim aside and ran through a gate, making her escape. The gist of Defendant's testimony was pithily summarized by [the prosecutor] during cross-examination. After reviewing with Defendant the numerous points where other witnesses had contradicted her testimony — which is worth reading in it entirety — [the prosecutor] asked, "Ma'am, it sounds like that just about everyone has been mistaken today but you, is that what you're telling us?"

Furthermore, the Defendant's testimony regarding her drug use at or around the time of this incident strongly militates against any likelihood of a downward departure based on so-called dual diagnosis. In addition to that, Defendant's motion paints a selective and inaccurate picture of exactly what was said at sentencing. [An excerpt of the sentencing transcript details] what actually happened. After discussing a guideline scoresheet issue the Court solicited the State's recommendation, which was the maximum sentence. Turning to defense counsel the Court was advised that Defendant already had been evaluated for placement in one program but that it would not accept her due to the severity of some of her charges. Not only is it clear from the record that the Court was told this facility treated for both drug addiction and mental illness, but also that the Court was provided with documentation about the nature and extent of Defendant's mental health issues. The Court read this and observed that it was "based entirely on things she told [the author]." After hearing from Defendant the Court stated that it did not consider any of this a mitigating circumstance. This comment was repeated, and amplified upon, in response to subsequent statements by defense counsel. After reviewing the aggravated nature of the offenses, including the injury to one victim, the Court stated, "I'm not the slightest bit convinced your client has had a happy life. I mean, it's just not a defense to any of this stuff. And, frankly, with this kind of record, it's not a mitigating circumstance."

Even if, arguably, some evidence was presented regarding possible dual diagnosis, such a finding does not *ipso facto* require the Court to entertain a downward departure sentence. Instead, this decision is a two-step process. First, the Court must find competent evidence in support of the departure criterion. But

then the Court must also determine whether that criterion, even if proven, motivates it to benefit the defendant. The Court may very well conclude that aggravating circumstances continue to outweigh mitigators, as it most obviously did here.

The record shows trial counsel argued at sentencing as follows (Respondent's Exhibit 1b, pp. 455–):

> [COUNSEL]: Yes, Judge. We would argue mitigation of mental health. I do have a letter . . . from Mr. Howard Cone at Tri–County where she was evaluated to be placed into the Florida Center. I received a phone call from Florida Center last week. They would not take her based on the robbery charge and the battery charge.
>
> THE COURT: Do you want this made part of the record?
>
> [COUNSEL]: Sure. That's fine, Judge. Where he was recommending her for Florida Center based on the fact that she does suffer from a mental illness and from drug abuse.
>
> THE COURT: What mental illness does she suffer from?
>
> [COUNSEL]: I'm looking for my copy but probably Ms. Gibson might be able to be the best one to tell you that.
>
> THE COURT: All right. Well, I want the — I want the expert's opinion.
>
> . . . .
>
> All right. Here it is. It's under category of relevant history. And if you'll give me a minute, I'll read it. This is based entirely on things that she told him. Well, here we go, the last page. Diagnostic impression, polysubstance dependence, bipolar disorder, depression. I don't know what tests he administered. All right. I've read it. Seal it up and place it in the file.
>
> [COUNSEL]: The other argument, Judge, I do not have the certified copy of conviction. The state does have that. It's my understanding, though, in going through them earlier that nine of those convictions are one sentencing event and that there is some age to those offenses. They're out of Orange County.

THE COURT: Anything else?

[COUNSEL]: No, Your Honor. We would ask for the bottom of the guidelines.

THE COURT: Does your client want to say anything?

[COUNSEL]: Do you want to talk to the judge?

THE DEFENDANT: Yeah. I didn't meant to hurt him. And I wasn't taking anything. Just they took my kids from me and I kind of lost it. I wasn't on any meds.

THE COURT: Anything else?

THE DEFENDANT: I never received help for my addiction.

THE COURT: I — I don't consider that a mitigating circumstance to be honest with you. Anything else?

THE DEFENDANT: No.

THE COURT: All right. Sentence to count one —

[COUNSEL]: Judge, just to make the record clear, she did have a child back in October that was taken into custody by the Department of Children and Families because of her —

THE COURT: I'm not making light —

[COUNSEL]: — drug abuse problem.

THE COURT: — of it, [counsel]. I would never make light of something like that.

[COUNSEL]: No, Judge, I was just trying —

THE COURT: What . . . . does it have to do with the entitlement to go into somebody's house and . . . bite a chunk out of them?

[COUNSEL]: I'm not trying to make light of the verdict, Judge. I'm just trying to explain what she was saying —

THE COURT: Okay.

[COUNSEL]: — or trying to say.

THE COURT: I'm not the slightest bit convinced your client has had a happy life. I mean, it's just not a defense to any of this stuff. And frankly, with this kind of record, it's not a mitigating circumstance.

THE DEFENDANT: It was a long time ago.

THE COURT: But the victory in this case to me is that the state did not seek habitual offender sanctions. I would have imposed them. The sentence in count one is 15 years Florida State Prison. On sentence on the petit theft I've already done. The sentence for battery on the elderly gentleman is five years Florida State Prison to run consecutive. Court cost is reduced to a judgment. There is no sentence obviously on the one she was acquitted.

The record shows that the trial judge was apprised of Gibson's mental health issues. Gibson fails to describe what other "mitigating information" counsel could have presented at a later sentencing hearing. Given her lengthy criminal history and the facts of the case, the record does not support a conclusion that either some unspecified mitigating evidence or statements by unnamed people on Gibson's behalf would have resulted in a lesser sentence. Gibson demonstrates neither deficient performance by trial counsel nor resulting prejudice under *Strickland*. Consequently, Gibson fails to meet her burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts in rejecting these two grounds of ineffective assistance of trial counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Four**

Gibson contends that the trial court violated her rights under the Sixth and Fourteenth Amendments by denying her motion for judgment of acquittal on the

burglary charge.  She alleges that the state failed to refute her reasonable hypothesis of innocence that she was "merely trespassing" and had no intent to commit a crime inside the victim's home.  The respondent opposes this ground as unexhausted and procedurally defaulted because Gibson argued on direct appeal only a violation under state law.  Gibson does not challenge in her reply the respondent's assertion of default.

An applicant must present each claim to a state court before raising the claim in federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971).  *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").  Also, an applicant must present to the federal court the same claim presented to the state court.  *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").  "Mere similarity of claims is insufficient to exhaust."  *Duncan v. Henry*, 513 U.S. at 366.

As *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), explains, an applicant must alert the state court that he is raising a federal claim and not just a state law claim:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted).

When Gibson presented this ground to the state court in her appellate brief she cited only state authority and did not assert a violation of a federal constitutional right. (Respondent' Exhibit 2, pp. 13–16) Gibson neither cited a federal case or a federal constitutional provision, nor labeled the claim "federal." Consequently, Gibson did not "fairly present" this ground to the state court. *See Baldwin*, 541 U.S. at 27; *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012) ("In other words, 'to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'") (quoting *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007)); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) (finding that *Baldwin* and *Lucas* "stand for

the proposition that an applicant with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim").

Gibson's failure to present to the state court a federal claim challenging the denial of her motion for judgment of acquittal deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. *See also Anderson v. Harless*, 459 U.S. 4, 5 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made."); *Preston*, 785 F.3d at 460 (noting that "simply mentioning a phrase common to both state and federal law, like 'sufficiency of the evidence,' cannot constitute fairly presenting a federal claim to the state courts"). Consequently, Gibson's claim is unexhausted. State procedural rules preclude Gibson from returning to state court to present her federal claim in a second direct appeal. Gibson's failure to properly exhaust her federal claim in the state court results in a procedural default.

"If the [applicant] has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, an applicant "must demonstrate that some

objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, an applicant must demonstrate not only that an error at the trial created the possibility of prejudice but that the error worked to her actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982). In other words, an applicant must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, an applicant may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495 96 (1986). A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet the "fundamental miscarriage of justice" exception, Gibson must show constitutional error coupled with "new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Gibson fails to demonstrate cause for the default of her claim challenging the denial of her motion for judgment of acquittal because she fails to show that some "external factor" prevented her from raising the federal claim on direct appeal.

*Wright*, 169 F.3d at 703. Gibson likewise fails to establish prejudice because she does not show that the alleged error infected the entire trial with constitutional error. *Frady*, 456 U.S. at 170. She cannot meet the "fundamental miscarriage of justice" exception because she presents no "new reliable evidence" that she is actually innocent. *Schlup*, 513 U.S. at 327. Because Gibson satisfies neither exception to procedural default, ground four is procedurally barred from federal review.

Accordingly, Gibson's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Gibson and close this case.

### DENIAL OF BOTH<br>A CERTIFICATE OF APPEALABILITY<br>AND LEAVE TO APPEAL IN FORMA PAUPERIS

Gibson is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Gibson must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues she seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because she fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Gibson is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Gibson must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 28, 2018.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE